<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **VERNON HALPIN,** | : | **Civil Action No.: 10-3245 (AET)** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **MEMORANDUM OPINION** |
| | : | **AND ORDER** |
| **BARNEGAT BAY DREDGING CO.,** | : | |
| **INC.,** | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

<u>**ARPERT, U.S.M.J**</u>

### I.      INTRODUCTION

This matter having come before the Court on a Motion by Plaintiff Vernon Halpin ("Plaintiff" or "Halpin") to "compel Defendant Barnegat Bay Dredging Co., Incorporated ("Defendant" or "BBD") and Michael Walters ("Walters") and/or The Walters Nixon Group, Inc. ("Nixon Group") to produce all statements obtained from interviews of employees of Defendant, others with knowledge of the December 4, 2009 accident, and the statement(s) of Plaintiff and drawing(s) produced by Plaintiff pursuant to FED. R. CIV. P. 34, 37, and 45" together with "an award of attorneys' fees and costs" [dkt. entry no. 19], returnable June 6, 2011.  Defendant filed opposition on May 23, 2011.  For the reasons stated herein, Plaintiff's Motion is denied as set forth more fully below.

### II.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff "has been employed by Defendant since 2005" and alleges that he was "injured on December 4, 2009 while employed as a deckhand aboard the dredge tender APACHE on Peck's Bay in Ocean City, New Jersey".  *See* Pl.'s Decl. of Florrie L. Wertheimer ("Wertheimer"), dkt. entry no. 19-1 at 1.  "Defendant's vessels, the PEE WEE and the

GENERAL, were likewise working on the day of the accident". *Id*. Plaintiff states that on the day of the accident he "was attempting to remove a poly ball from a 500' foot section of plastic discharge pipeline so that it could be attached to the metal discharge pipeline of the dredge JOHN FULLERTON". *See* Pl.'s Decl. of Halpin, dkt. entry no. 19-2 at 1. Plaintiff maintains that a "new section of pipeline...was brought to the vicinity of the APACHE with a poly ball inserted in both ends" and the "first poly ball was removed without incident...[and] attached to the 5,000' foot plastic discharge line". *Id*. at 1-2. Thereafter, Plaintiff alleges that he "was attempting to remove the plug which was located at the bottom of the second poly ball" while he "straddled" a "portion of the new 500' foot section" when "the pipeline...lurched forward" and he was "propelled forward to the pontoon supporting the metal pipeline". *Id*. at 2. Plaintiff claims that the sudden lurch was caused by "the tender PEE WEE, [which] struck the plastic pipeline approximately 2000' feet from the APACHE". *Id*. As a result, Plaintiff's "right arm was crushed between the open end of the metal discharge pipe coming from the dredge and the new section of plastic pipeline, causing a deep laceration of [his] forearm and other injuries to [his] right arm". *Id*. Plaintiff states that he "came back on board the APACHE" and "waited for the PEE WEE to arrive" in order to be "taken to the dock" and then "the hospital in Atlantic City". *Id*.

According to Plaintiff, on December 9, 2009, "the day of [his] release from the hospital, Walters...called [him] to discuss [his] physical condition and the accident". *Id*. "Within a week of [his] discharge", "Walters visited Plaintiff at...home" and together they "discussed the accident and Plaintiff drew...an accident diagram with [his] left hand". *Id*. Plaintiff notes that Walters "is the President of the Nixon Group and, upon information and belief, third-party administrator for Defendant's insurance carrier Northern Assurance Company of America". *See* Pl.'s Decl. of Wertheimer at 3.

Defendant asserts that "Plaintiff is a seaman entitled to maintenance and cure" based upon the "crushing injury" he suffered "to his right arm on December 4, 2009...while employed as a Jones Act seaman by Defendant". *See* Def.'s Opp'n Br., dkt. entry no. 23 at 1. "Jones Act seaman who are injured or become ill during the course of their employment are automatically entitled to maintenance and cure" even if the "cause of the injury or illness...[is] not...work related" or is "irrelevant to the employer's obligation to pay...benefits". *Id*. Defendant contends that it "met its maintenance and cure obligation with respect to this Plaintiff". *Id*. However, Defendant acknowledges that "[a]s a seaman, Plaintiff may sue his employer for injuries sustained in the service of the ship" and "may recover damages if the injury was the result of the negligence of the employer or the unseaworthiness of the vessel". *Id*. Here, Defendant states that "[b]ecause of the severity of the injury, Defendant and its insurer anticipated that Plaintiff would bring a lawsuit under the Jones Act and general maritime law". *Id*. "Having learned the extent of Plaintiff's injuries just days after the occurrence, and in light of the litigation which would inevitably follow", Defendant maintains that Walters "investigated the accident to develop any defenses to Plaintiff's claims". *Id*. Walters states that his "firm has been retained on a number of occasions to act to investigate claims and also to handle the maintenance and cure aspects of Jones Act cases". *See* Def.'s Opp'n Decl. of Walters, dkt. entry no. 22-1, Ex. A at 1. "In cases with minor injuries or where litigation is not expected", Walters states that he "simply monitor[s] the claimant's medical progress and handle[s] the payment of benefits". *Id*. However, "[i]n cases involving Jones Act seaman and more serious injuries", Walters "will undertake a more in depth investigation". *Id*. "On December 8, 2009, [Walters] received a verbal request from the insurance representatives of Defendant to conduct an investigation" with respect to the accident involving Plaintiff on December 4, 2009. *Id*. "On December 9, 2009,

[Walters] contacted Plaintiff's wife and was told that Plaintiff was going to be released from the hospital that day". *Id*. "On December 10, 2009, [Walters] called Plaintiff and discussed his physical condition" and, based upon "the fact that the injuries seemed...serious and Plaintiff was a Jones Act seaman, [Walters] expected that Plaintiff would file suit". *Id*. at 2. "On December 14, 2009, [Walters] met with Plaintiff at his home and generally discussed the details of the accident and took some rough notes". *Id*. Walters notes that "[o]n the same date, Plaintiff drew three diagrams and [Walters] made a number of notes on one of them". *Id*. However, Walters did not "prepare any written statement for Plaintiff to sign and...never made any recording, electronic or otherwise, of...[his] discussion" with Plaintiff. *Id*. "On December 30, 2009, [Walters] had telephone interviews with Swan, Ferraro, Beam and Laurence" and "took some rough notes of these interviews on [his] desktop computer". *Id*. However, Walters did not prepare "any written statements for these individuals to sign and...did not record either electronically or otherwise [his] discussions with these individuals". *Id*. Walters maintains that he has "notes in [his] file concerning these interviews...and reported [his] conclusions to the insurer regarding...Plaintiff and witnesses, as well as the potential liability of and defenses available to Defendant". *Id*. Walters never interviewed Hill, O'Neil, Fullerton, Moore, or Rose and  never prepared any statements for these individuals to sign. *See* Def.'s Opp'n Decl. of Raymond T. Letulle ("Letulle"), dkt. entry no. 22-2, Ex. B at 2-3.

On June 23, 2010, Plaintiff filed a Complaint alleging that his injuries were sustained "wholly and solely by reason of the negligence, recklessness and carelessness of Defendant, its agents, servants and/or employees, and by reason of the unseaworthiness of its vessels". *See* Pl.'s Compl., dkt. entry no.1 at 2.  On November 5, 2010, Plaintiff forwarded his "First Notice to Produce" and requested that Defendant provide:

4

6. All statements obtained by Defendant or anyone acting on behalf of Defendant relating to Plaintiff's accident including any statements obtained from Plaintiff.

7. Any and all investigation reports or photographs taken or relating in any manner whatsoever to Plaintiff's accident of December 9, 2009 and all photographs, videotapes, films or visual reproductions or descriptions of Plaintiff purporting to depict Plaintiff's activities from December 9, 2009 through the present.

*See* Pl.'s Ex. C, dkt. entry no. 19-5.  Defendant responded to these requests on December 3, 2010

and stated:

6. Objection.  Answering Defendant objects to this request as it seeks disclosure of information protected from disclosure as material prepared in anticipation of litigation or is attorney work product.  Without waiving this objection, none.

7. Objection.  Answering Defendant objects to this request as it seeks disclosure of information protected from disclosure as material prepared in anticipation of litigation or is attorney work product.  Without waiving this objection, Answering Defendant does not possess any photographs, videotapes, films, or visual reproductions or descriptions of Plaintiff purporting to depict Plaintiff's activities from December 9, 2009 through the present. Answering Defendant reserves the right to supplement its response.

*See* Pl.'s Ex. D, dkt. entry no. 19-6.

Thereafter, Plaintiff served a subpoena on "Michael Walters/Walters Nixon Group, Inc."

requesting:

All recorded statements (electronic otherwise) of interviews conducted regarding Plaintiff's accident of December 4, 2009 with the following:

1.    Joseph Hill ("Hill")
2.    Robert O'Neil ("O'Neil")
3.    Philip Beam ("Beam")
4.    Richard Ferraro ("Ferraro")
5.    Kevin Swan ("Swan")
6.    Richard Laurence ("Laurence")
7.    John Fullerton ("Fullerton")
8.    Ryan Moore ("Moore")

9.      Susan Rose ("Rose")

*See* Pl.'s Ex. E, dkt. entry no. 19-7.  Although Walters and the Nixon Group "never responded to

this subpoena", Defendant's counsel responded by letter dated April 25, 2011 (*Id.* at 3-4) and

stated:

> We are responding to your subpoena issued to the Nixon Group.
> We object to the subpoena as calling for material gathered in
> anticipation of litigation or otherwise subject to privilege.  Without
> waiving the objection, the Nixon Group has no recorded witness
> statements in its file.

*See* Pl.'s Ex. G, dkt. entry no. 19-9.

Defendant maintains that "Walters not only had reason to anticipate litigation, ...[he] had

reason to expect litigation" based upon his training as "an attorney" and the fact that he is

"president of the Nixon Group, a company that provides investigation services to marine

employers and their insurers".  *See* Def.'s Opp'n Br. at 1.  Defendant notes that "Walters does

not routinely investigate every accident or injury to maritime employees" because "[i]njuries to

seaman which appear minor are simply handled as maintenance and cure claims...and interviews

of the employee and witnesses are not undertaken".  *Id.* at 1-2.  However, in this case, "Walters

had an initial telephone conversation with Plaintiff on December 10, 2009" during which he

"learned the extent of Plaintiff's injuries...and the fact that he had been hospitalized for 6 days".

*Id.* at 2.  Defendant maintains that because "Plaintiff was a Jones Act seaman with the statutory

right to sue his employer", and "given the nature of Plaintiff's injuries...which were serious",

"Walters expected that litigation would ensue...and [therefore] arranged to interview Plaintiff

and...Beam, Ferraro, Swan and Lawrence".  *Id.*  Defendant notes that all of the individuals

interviewed by Walters "were employed by Defendant".  *Id.*

Plaintiff maintains that based upon his own recollection and the deposition testimony of

6

Hill, O'Neil, Beam, Ferraro, Swan, and Laurence, "answers to such questions as what caused the PEE WEE to stop and/or...[abruptly] pause...[and] the configuration of the APACHE, the steel discharge pipe, and...[the] new plastic pipe section" cannot be obtained "under any circumstances" absent production of the "statements" taken by Walters and the Nixon Group. *See* Pl.'s Decl. of Wertheimer at 4-9.   Similarly, Plaintiff contends that "whether the answers provided...[to Walters] were the same as [those] provided" during deposition "is questionable" because memories "may have faded" and Plaintiff "cannot obtain the substantial equivalent of the contemporaneous statements [given to Walters] without undergoing substantial hardship...". *Id*. at 9.   Oppositely, Defendant asserts that the "documents prepared by Walters are not statements".   *See* Def.'s Opp'n Br. at 2.   Defendant maintains that Walters "did not prepare verbatim written statements...[and] did not ask anyone to adopt or sign any statement".   *Id*. Rather, Walters made "notes of the conversations for his file...and reported his conclusions to the insurer and Defendant".   *Id*.   Defendant contends that "[s]uch documents have not been requested, and...production cannot be compelled because they are materials prepared in anticipation of litigation...and as they contain Walters' mental impressions, opinions and strategy". *Id*.   Defendant notes that "Plaintiff's counsel noticed the depositions" of "[a]ll of the witnesses interviewed by Walters".   *See* Def.'s Decl. of Letulle, Ex. B at 1.

Based upon the fact that counsel could not reach an agreement with respect to the disputed materials, Plaintiff filed the present Motion on May 12, 2011.  *See* dkt. entry no. 19.

### A.   Plaintiff's Arguments in Support of the Motion

**1.   Plaintiff is entitled to a copy of his own statement and any drawings or renderings he made pursuant to FED. R. CIV. P. 26(b)(3)(C).**

Plaintiff notes that he "made a statement to Walters...within a week after his release from the hospital".  *See* Pl.'s Br., dkt. entry no. 20 at 2.  Citing FED. R. CIV. P. 26(b)(3)(C), Plaintiff

argues that "[t]his statement falls squarely within the confines of [the] Rule" and states that Plaintiff "requested his statement from Defendant...and subpoenaed same from [the] Nixon Group" and "was informed by Defendant that no such statements exist". *Id.* at 2-3. For these reasons, Plaintiff seeks to compel a copy of his own statement and any drawings or rendering he made and, pursuant to FED. R. CIV. P. 37(a)(5), seeks an "award of expenses" related thereto. *Id.*

> **2.** **Plaintiff is entitled to copies of the statements taken by Walters pursuant to case law and the Federal Rules of Civil Procedure.**
>
> > **(a)** **Plaintiff is entitled to copies of the statements taken by Walters pursuant to case law.**

Plaintiff notes that Walters, "as principal of the Nixon Group, interviewed all [of] Defendant's employees who were working on the day of Plaintiff's accident and...other personnel". *Id.* at 3. Plaintiff argues that Walters "did so in the ordinary course of his business and in his capacity as a third-party administrator for Defendant's insurance carrier, Northern Assurance Company of America". *Id.* Citing *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 197 F.R.D. 620, 635 (N.D. Iowa 2000), Plaintiff contends that "[c]ourts have observed that the application of the work product doctrine to documents prepared by insurance companies during claims investigations is difficult because the nature of the insurance business is such that an insurance company must investigate a claim prior to determining whether to pay its insured, and thus pre-litigation investigation is the routine business of insurance companies". *Id.* As such, Plaintiff asserts that "these documents are not afforded the designation of work-product". *Id.*

From the outset, Plaintiff "strenuously" argues that "these statements are in no way protected attorney work-product". *Id.* Citing *Hickman v. Taylor*, 329 U.S. 495 (1947), *In re Cendant Corp.*, 343 F.3d 658, 661-62 (D.N.J. 2003), *United States v. Nobles*, 422 U.S. 225, 238

(1975), and *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988), Plaintiff notes that the "work-product doctrine...shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case". *Id.* at 4. Citing *In re Grand Jury (Impounded)*, 138 F.3d 978, 981 (3d Cir. 1998), *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991), *Nobles*, 422 U.S. at 238, 39, and *Times of Trenton Pub. Corp. v. Public Utility Service Corp.*, 2005 WL 1038956, at *4 (D.N.J. 2005), Plaintiff further notes that "[t]his protection...can extend to materials prepared by an attorney's agent...if that agent acts at the attorney's direction in creating such documents". *Id.* Pursuant to *Schneck v. International Business Machines Corp.*, 1993 WL 765638, at *4 (D.N.J. 1993), *Ennis v. Anderson Trucking Service Inc.*, 141 F.R.D. 258, 259 (E.D.N.C. 1992), and *Times of Trenton*, 2005 WL 1038956, at *4, "work-product exists when the party opposing discovery establishes three items: 1) that the material sought for discovery consists of documents or other tangible items; 2) that the material was prepared in anticipation of litigation; and 3) that the material was created by or for a party or that party's representative". *Id.*

Plaintiff argues that despite serving a subpoena, "Defendant unilaterally dismissed the subpoena for production and made no showing...whatsoever". *Id.* at 5. Citing *Raritan Bay Federal Credit Union v. Cumis Insurance Society, Inc.*, 2010 WL 4292175, at *12-13 (D.N.J. ) and *In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 183-84 (D.N.J. 2003), Plaintiff maintains that "courts...have applied what amounts to a two part test for ascertaining whether the documents (or things) at issue should be protected under the attorney work produce privilege":

> The first prong of the inquiry is the reasonable anticipation test which requires a party to show that there existed an identifiable specific claim of impending litigation when the materials were prepared. A remote prospect, an inchoate possibility, or a likely chance of litigation will not do. ...The second prong requires the Court to determine whether in light of the nature of the document

> and the factual situation in the particular case, the document can
> fairly be said to have been prepared or obtained because of the
> prospect of litigation.

*Id*.  Plaintiff also references *American Home Assur. Co. v. U.S.*, 2009 WL 3245445, at *2-3 (D.N.J. 2009) as "a case on point from this Circuit".  *Id*.  Specifically, Plaintiff argues that *American Home* and *Raritan Bay* stand for the proposition that: (1) reports generated in the course of general investigations – including investigation reports prepared by an insurer's representative – even if litigation is arguably anticipated, are not entitled to work-product protection; (2) even assuming the insurance company believed at the time of the accident that it may face some sort of claim, the steps an insurance company takes immediately upon learning of an accident are almost always part of its ordinary business of claim investigation because the concept that the mere occurrence of an accident constitutes anticipation of litigation has been soundly rejected; and (3) simple involvement of counsel in an insurer's claim investigation does not transform the investigation to one undertaken in anticipation of litigation.  *Id*. at 5-7.

> **(b)    Defendant's witnesses all had difficulty remembering the accident at deposition, making their statements discoverable pursuant to Rule 26(b)(3) because they cannot be otherwise obtained, with or without substantial hardship.**

Plaintiff maintains that "there is no other way for Plaintiff to obtain the statements made to the insurance investigator shortly after the accident than to obtain them from...the insurance investigator or from Defendant, to whom they were indubitably provided by the investigator".  *Id*. at 7.  Citing Fed. R. Civ. P. 26(b)(3)(A)(ii), Plaintiff notes that "statements may be obtained if the party shows that it has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means".  *Id*.  Citing *DeBruce v. Pennsylvania R. Co.*, 6 F.R.D. 403, 406 (E.D. Pa. 1947), Plaintiff argues that the "statement of a witness taken immediately after [an] accident is a catalyst of unique value in the development

10

of the truth through the judicial process" and "should be available to both parties, no matter which one has obtained it". *Id.* at 8. Citing 8 Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 2022 and *Sharon Steel Corp. v. Travelers Indemnity*, 26 F.R.D. 113 (N.D. Oh. 1960), Plaintiff maintains that "production should be ordered if the witness has a faulty memory and no longer remembers the details of the event" despite Defendant's claims of attorney work product. *Id.* Here, Plaintiff maintains that the "timing of the statements...and the fact that they were done in the ordinary course of business by an investigator prior to institution of suit makes them beyond the aegis of attorney work-product and removes them from the ambit of FED. R. CIV. P. 26(b)(3)(B)" such that production should be compelled. *Id.* Citing *American Home Assurance, Co., v. Zim Jamaica*, 418 F. Supp. 2d 537, 552 (S.D.N.Y. 2006) and *Rofail v. U.S.*, 227 F.R.D. 53, 57 (E.D.N.Y. 2005), Plaintiff argues that "[d]iscovery is designed to further the truth seeking process", "to enable litigants and the court to develop a complete factual record", and is "not a game of ambush". *Id.* As such, Plaintiff requests that production be compelled. *Id.*

### B.      Defendant's Arguments in Opposition to the Motion

Initially, Defendant cites FED. R. CIV. P. 26(b)(3)(A) and states that "ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including that other party's attorney, consultant, surety, indemnitor, insurer or agent)". *See* Def.'s Opp'n Br., dkt. entry no. 23 at 2. However, "[e]xceptions are made for documents otherwise discoverable and upon a showing of substantial need and a showing that the substantial equivalent cannot be obtained by other means". *Id.* at 3. Defendant notes that here, "Plaintiff requested a copy of his statement, ...a drawing which he made when he was interviewed by Walters", and "statements of other witnesses...whom are or were employees of Defendant when they were interviewed". *Id.*

11

1.    **Plaintiff would be entitled to a copy of his own statement if such a statement existed.**

Defendant agrees that "Plaintiff would...be entitled to a copy of his own statement...if such a statement existed". *Id.* Citing FED. R. CIV. P. 26(b)(3)(C), Defendant states that the term statement is defined as "(i) a written statement that the person has signed or otherwise adopted or approved; or (ii) a contemporaneous stenographic, mechanical, electrical or other recording – or a transcription of it – that recites substantially verbatim the person's oral statement". *Id.* Defendant maintains that it "previously explained to Plaintiff's counsel...[that] no such statement exists" because "Walters interviewed Plaintiff in person...but did not record the interview by stenographic or other means". *Id.* Defendant reiterates that "[t]here is no statement to provide". *Id.*

2.    **Redacted copies of Plaintiff's drawings were previously provided to Plaintiff's counsel.**

Defendant states that "[p]rior to the filing of this motion, [Defendant's] counsel was unaware of the existence of any drawings or sketches made by Plaintiff prior to his deposition" because the "subpoena to Walters requested recorded statements...and nothing else". *Id.* Defendant notes that it "responded to the subpoena by indicating that there were no such statements". *Id.* "Upon receipt of the motion and declaration of Plaintiff, Defendant promptly inquired of Walters as to the existence of any drawing by Plaintiff" and discovered that "Walters had three drawings in his file, some of which contained Walters' handwritten notations". *Id.* Defendant produced "[r]edacted copies of these drawings...on May 18, 2011". *Id.* at 3-4.

3.    **Walters did not take statements from Defendant's employees and the notes that he took when interviewing these employees are protected from production by Rule 26.**

Citing FED. CIV. P. 26(b)(3)(C), Defendant argues that "Walters did not take

statements...from any of the other witnesses that he interviewed" according to the definition of statement set forth above. *Id*. at 4. Rather, Defendant maintains that these "witnesses were...employees of Defendant" and the interviews "were conducted in anticipation of litigation" such that "any notes or reports created by Walters are protected from production by Rule 26". *Id*. Citing FED. R. CIV. P. 26(b)(3)(A), *Hickman v. Taylor*, 329 U.S. 495 (1947), *Seal v. University of Pittsburgh*, 135 F.R.D. 113, 114 (W.D. Pa. 1990), and *Upjohn Co. v. United States*, 499 U.S. 383, 397 (1981), Defendant contends that an "interviewer's notes or memoranda prepared after the fact are almost always protected because the particular facts that the interviewer saw fit to write down regarding the witnesses' remarks naturally reveals the writer's mental impressions". *Id*. "Although the Court was speaking about interviews conducted by an attorney, the logic of the statements applies equally to a trained investigator such as Walters...who happens to be an attorney". *Id*. Citing *Bogosian v. Gulf Oil Corp.*, 783 F.2d 587 (3d Cir. 1984), *Andritz Sprout-Bauer, Inc. v. Beazer East, Inc.*, 174 F.R.D. 609 (M.D. Pa. 1997), and *Pinstripe, Inc. v. Manpower, Inc.*, 2009 WL 2252137, at *4 (N.D. Ok. 2009), Defendant maintains that "[a]lthough the names of witnesses interviewed are clearly discoverable, notes concerning the interview are not" because "[i]f the interviewer is a representative of a party, it is not necessary that he also be that party's attorney for the protection to apply". *Id*. at 4-5. Pursuant to FED. R. CIV. P. 26(b)(3), Defendant argues that "work product protection...[is not limited] only to the work of lawyers" and includes "consultants, insurers and others" depending on the "motivation behind its preparation...rather than who prepared it". *Id*. at 5.

Defendant maintains that the cases cited by Plaintiff "are inapposite". *Id*. In *American Home Assur. Co. v. U.S.*, 2009 WL 3245445, at *1 (D.N.J. 2009), the court concluded that "an accident report prepared on the day of the accident by the insurer's investigator" was "generated

13

in the ordinary course of business" and found "that it is the routine business of an insurance company to investigate an insured's claim prior to determining whether to pay its insured". *Id*. Citing *In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir. 1979), Defendant argues that "courts have made it very clear that...[such] discovery disputes must be resolved on a case by case basis" with the "litigation prong requir[ing] that the specific facts and circumstances of a given case establish that the document was prepared or obtained because of litigation and not for business or other reasons". *Id*. In *Raritan Bay Federal Credit Union v. Cumis Ins. Society, Inc.*, 2010 WL 4292175, at *12-13 (D.N.J. 2010), the court "found that...interviews were conducted in the ordinary course of business and not in anticipation of litigation" because "the insurer had not decided whether or not to deny coverage when the interviews took place". *Id*. at 5-6. Citing *Long v. Anderson University*, 204 F.R.D. 129, 137 (S.D. Ind. 1999), *Goodyear Tire and Rubber Co. v. Chiles Power Supply Inc.*, 190 F.R.D. 532, 536-38 (D. Ind. 1999), and *Weitzman v. Blazing Pedals, Inc.*, 151 F.R.D. 125, 126 (D. Colo. 1993), Defendant notes that "[o]ther courts have held that witness statements taken in the context of a third party claim against the insured are work product...because the insurer is obligated to defend its insured and therefore such statements are usually taken to prepare the defense of the third party claim". *Id*. at 6. Finally, in *Schneck v. International Business Machines Corp.*, 1993 WL 765638, at *6 (D.N.J. 1993), contrary to Plaintiff's argument, the court "denied production of any employee statements and documents of potential witnesses interviewed...[because] that material constituted work product". *Id*. at 7. Defendant maintains that "[e]ven if the documents sought by Plaintiff were statements as defined by the Rule, the information sought is from Defendant employee witnesses[,] ...was generated by Walters in anticipation of litigation by this Plaintiff[,] ...[and] is therefore work product". *Id*.

14

### 4.   Plaintiff cannot demonstrate a substantial need for the information requested.

Citing FED. R. CIV. P. 26(b)(3)(A), Defendant argues that once it "establishes that...[the documents at issue were] prepared in anticipation of litigation, the burden then shifts to the moving party to show that it has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means". *Id*. at 7. Despite the fact that Plaintiff "argues that he has a substantial need for the statements of the witnesses", Defendant maintains that it has "repeatedly told Plaintiff's counsel...[that] there are no statements as they are defined in...[FED. R. CIV. P. 26(b)(3)(C)]". *Id*.  Further, Plaintiff's "only justification seems to be that the witnesses were interviewed shortly after the accident". *Id*. However, Defendant argues that "this argument must fail...in light of the fact that the interviews were not contemporaneous, all of the witnesses [are] available[,] ...[all of the witnesses] were deposed at length by Plaintiff's counsel", and "[n]one of these witnesses testified that they could not remember what happened". *Id*.

Citing *Goodyear Tire and Rubber Co. v. Chiles Power Supply Inc.*, 190 F.R.D. 532, 534-38 (D. Ind. 1999), Defendant contends that a "similar argument failed in the...[*Goodyear* case]" where the court rejected plaintiff's argument that it had a substantial need for statements taken by an insurer's representatives and attorneys – despite the fact that "they were taken much closer in time to the incidents involved in the alleged loss" – because the "litigation had been ongoing for three years...during which time plaintiff had been provided with the names of the witnesses". *Id*. at 8.  Here, unlike instances where "years have gone by and the witnesses memories have faded", "suit was filed...[within] seven months of the accident", the "witnesses were deposed 14 months after the accident...and all recalled the incident in great detail". *Id*.

Defendant maintains that Plaintiff "mistakenly argues that there is no other way to obtain

the statements made to the insurance investigator shortly after the accident". *Id*. Defendant argues that Plaintiff's citation to *DeBruce v. Pennsylvania R. Co.*, 6 F.R.D. 406 (E.D. Pa. 1947) for the proposition "that a witness statement taken immediately after the accident is a catalyst of unique value and should be available to both parties" is "no longer good law" because *DeBruce* was "abrogated by *Alltmont v. U.S.*, 177 F.2d 971, 974 (3d Cir. 1950)". *Id*. at 8-9. Noting "that the Eastern District stood alone in its construction of the Rule", the *Alltmont* court "declined to order production of...statements...[and] advised movant to depose the witnesses without haste". *Id*. at 9. Here, "there are no statements as they are defined in the Rule" and "the witness interviews conducted by Walters were taken nearly one month after the accident", not immediately "as was the case in *DeBruce*". *Id*.

Defendant agrees that Plaintiff is "correct in identifying a temporal element to the value of statements, although 'shortly' has not been adopted by the courts in the Third Circuit". *Id*. Citing *Basinger v. Glacier Carriers, Inc.*, 107 F.R.D. 771 (M.D. Pa. 1985) and *Tinder v. McGowan*, 1970 U.S. Dist. LEXIS 9009 (W.D. Pa. 1970), Defendant maintains that "statements procured approximately one month after...[an] accident are neither contemporaneous nor unique, and therefore, substantially the same information can be obtained by deposing the witnesses". *Id*. Here, Defendant reiterates that "there are no statements...but [rather] an investigator's record of interviews of employee witnesses...which were conducted on December 30, 2009, nearly one month after the incident". *Id*. Defendant contends that the "interviews sought by Plaintiff are therefore...like the statements in the *Basinger* case" – "neither contemporaneous...nor unique". *Id*.

Defendant maintains that Plaintiff "misconstrues the holding of *Sharon Steel Corp v. Travelers Indemnity*, 26 F.R.D. 113 (N.D. Oh. 1960)" by asserting that it stands "for the

proposition that production can be ordered when there is faulty memory of the witness". *Id*. at 10. In *Sharon Steel*, "[t]he issue...was whether production could be ordered where the movant could not recall the exact comments or context of prior statements that were used at his deposition to disparage his testimony" and "plaintiff...feared that the damaging statements may have been either taken out of context at his deposition or the explanation of those statements was withheld". *Id*. Here, "Plaintiff...does not claim that he cannot recall what was said to Walters...or that what he said was used to his detriment at his deposition", but rather "[h]is only claim is that he does not have a copy of Walters' interview". *Id*. Further, "Plaintiff has not argued that the employee witnesses could not recall the events of December 4, 2009" and "makes no argument that he has been unable to obtain the information that may be contained in the interviews", but rather simply asserts "that there is no other way...to obtain the statements themselves". *Id*. Defendant notes that the declaration of Plaintiff's counsel "is replete with testimony from all witnesses regarding the events of December 4, 2009" and simply states that "some of the witnesses may not recall the name of the company or the name of the investigator who they may have spoken to about the incident, neither of which are relevant". *Id*.

## III.   DISCUSSION

### A.   Legal Standards

#### 1.   Discovery

Pursuant to FED. R. CIV. P. 26(b)(1), "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" and "the court may order discovery of any matter relevant to the subject matter involved in the action", although "relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence". *See also Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir.

2000).   The precise boundaries of the Rule 26 relevance standard depend upon the context of each particular action, and the determination of relevance is within the discretion of the District Court.   *See Barnes Found. v. Twp. of Lower Merion*, 1996 WL 653114, at *1 (E.D. Pa. 1996). Importantly, "Courts have construed this rule liberally, creating a broad vista for discovery". *Takacs v. Union County*, 2009 WL 3048471, at *1 (D.N.J. 2009)(*citing Tele-Radio Sys. Ltd. v. DeForest Elecs., Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981)); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Evans v. Employee Benefit Plan*, 2006 WL 1644818, at *4 (D.N.J. 2006); *Jones v. Derosa*, 238 F.R.D. 157, 163 (D.N.J. 2006); *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000); *Lesal Interiors, Inc. v. Resolution Trust Corp.*, 153 F.R.D. 552, 560 (D.N.J. 1994).   "Review of all relevant evidence provides each party with a fair opportunity to present an effective case at trial".   *Jones*, 238 F.R.D. at 163; *see also Caver*, 192 F.R.D. at 159; *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990). "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation...[and] either party may compel the other to disgorge whatever facts he has in his possession".   *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).   "Whether certain documents are relevant is viewed in light of the allegations of the complaint, not as to evidentiary admissibility". *Id.*; *see also Scouler v. Craig*, 116 F.R.D. 494, 496 (D.N.J. 1987).   Importantly, "the party resisting discovery has the burden of clarifying and explaining its objections to provide support therefor".   *Tele-Radio*, 92 F.R.D. at 375; *see also Gulf Oil Corp. v. Schlesinger*, 465 F. Supp. 913, 916-17 (E.D. Pa. 1979); *Robinson v. Magovern*, 83 F.R.D. 79, 85 (E.D. Pa. 1979); *Nestle Foods*, 135 F.R.D. at 104-105.

## 2.     Rule 45: Subpoena

Pursuant to FED. R. CIV. P. 45,

...(d) Duties in Responding to a Subpoena.

(1) Producing Documents or Electronically Stored Information.

(A) Documents.  A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

...(2) Claiming Privilege or Protection.

(A) Information Withheld.  A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) Information Produced.  If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it.  After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim.  The person who produced the information must preserve the information until the claim is resolved.

Pursuant to FED. R. CIV. P. 26(b)(5),

(A) Information Withheld.  When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

(i) expressly make the claim; and

(ii) describe the nature of the documents, communications,

> or tangible things not produced or disclosed – and to do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Pursuant to L. Civ. R. 34.1,

> Where a claim of privilege is asserted in responding or objecting to any discovery requested in requests for documents, and information is not provided on the basis of such assertion, the party asserting the privilege shall in the response or objection identify the nature of the privilege (including work product) which is being claimed and if the privilege is being asserted in connection with a claim or defense governed by state law, set forth the state privilege rule being invoked. When any privilege is claimed, the party asserting it shall indicate, as to the information requested, whether any such documents exist.

Importantly, the Court notes that "it is not sufficient to merely state a generalized objection; instead, the objecting party must demonstrate that a particularized harm is likely to occur if the discovery be had by the party seeking it". *G-69 v. Degnan*, 130 F.R.D. 326, 331; *see also Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986); *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982), 8 Wright & Miller, Federal Practice and Procedure § 2035 at 264-265. "The Third Circuit has rejected broadside invocations of privilege which fail to designate with particularity the specific documents or file to which the claim of privilege applies". *Torres v. Kuzniasz*, 936 F. Supp. 1201, 1209-10 (D.N.J. 1996); *see also United States v. O'Neill*, 619 F.2d 222, 225 (3d Cir. 1980). In order to analyze a privilege claim, some courts have required the asserting party to provide "the date of the document, the name of its author, the name of its recipient, the name of all people given copies of the document, the subject of the document and the privilege or privileges asserted". *Wei v. Bodner*, 127 F.R.D. 91, 96 (D.N.J. 1989); *see also Jaroslawicz v. Engelhard Corp.*, 115 F.R.D. 515, 516 (D.N.J. 1987); *Kelchner v. International Playtex, Inc.*, 116 F.R.D. 469 (M.D. Pa. 1987); *United*

*States v. Exxon Corp.*, 87 F.R.D. 624 (D.D.C. 1980); *Bierman v. Marcus*, 122 F. Supp. 250 (D.N.J. 1954).

The Court notes that "the Rules afford non-parties special protection against the time and expenses of complying with subpoenas". *SAJ Distribs. v. Sandoz, Inc.*, 2008 U.S. Dist. LEXIS 50361, at *8-9 (D.N.J. 2008); *see also Exxon Shipping Co. v. United States Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994). "A subpoena is considered unduly burdensome when the court finds that it is unreasonable or oppressive". *OMS Invs., Inc. v. Leb. Seaboard Corp.*, 2008 U.S. Dist. LEXIS 94165, at *5-6 (D.N.J. 2008); *see also DIRECTV, Inc. v. Richards*, 2005 U.S. Dist. LEXIS 43764, at *6-8 (D.N.J. 2005). However, "[t]he party moving to quash has the heavy burden of demonstrating the unreasonableness or oppressiveness of the subpoena". *Id*. "A strict definition does not exist for unreasonable or oppressive requests, rather the court must decide what meets this criteria on a case by case basis" utilizing "the following factors in evaluating the reasonableness of a subpoena: (1) the party's need for the production; (2) the nature and importance of the litigation; (3) relevance; (4) the breadth of the request for the production; (5) the time period covered by the request; (6) the particularity with which the documents are described; and (7) the burden imposed on the subpoenaed entity". *Id*.; *see also Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998); *In re Auto. Refinishing Paint Antitrust Litig.*, 229 F.R.D. 482, 495 (E.D. Pa. 2005); *Nye v. Ingersoll Rand Co.*, 2011 U.S. Dist. LEXIS 7383, at *18-20 (D.N.J. 2011).

### 3.    Applicable Law

Pursuant to FED. R. EVID. 501,

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof

> shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.  However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Thus, "under this rule, in federal question cases the federal common law of privileges applies...[and] where state law provides the rule of decision, ...state privilege law will govern".

*Wm. T. Thompson Co. v. General Nutrition Corp.*, 671 F.2d 100, 103 (3d Cir. 1982).  However, it is obvious that "applying two separate disclosure rules with respect to different claims tried to the same jury would be unworkable" and "one rule or the other must govern".  *Id*. at 104.  "When there are federal law claims in a case also presenting state law claims, the federal rule favoring admissibility, rather than any state law privilege, is the controlling rule".  *Id*.

### 4.     Work-Product Privilege

Pursuant to FED. R. CIV. P. 26(b)(3),

> (A) Documents and Tangible Things.  Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).  But, subject to Rule 26(b)(4), those materials may be discovered if:

> > (i)     they are otherwise discoverable under Rule 26(b)(1); and
> > (ii)    the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

> (B) Protection Against Disclosure.  If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

> (C) Previous Statement.  Any party or other person may, on request

and without the required showing, obtain the person's own previous statement about the action or its subject matter. If the request is refused, the person may move for a court order, and Rule 37(a)(5) applies to the award of expenses. A previous statement is either:

    (i)    a written statement that the person has signed or otherwise adopted or approved; or

    (ii)    a contemporaneous stenographic, mechanical, electrical, or other recording – or a transcription of it – that recites substantially verbatim the person's oral statement.

"Unlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Federal Rule of Civil Procedure 26(b)(3)". *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988). A party may not ordinarily "discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)" absent a showing by the requesting party of "substantial need for the materials to prepare its case" and an inability, "without undue hardship, [to] obtain their substantial equivalent by other means". FED. R. CIV. P. 26(b)(3)(A). "If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation". FED. R. CIV. P. 26(b)(3)(B); *see also Quinn Construction, Inc. v. Skanska USA Building, Inc.*, 263 F.R.D. 190, 193 (E.D. Pa. 2009). "The work product doctrine is governed by a uniform federal standard set forth in FED. R. CIV. P. 26(b)(3) and 'shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'" *In re Cendant Corp. Securities Litig.*, 343 F.3d 658, 661-62 (3d Cir. 2003)(*quoting United States v. Nobles*, 422 U.S. 225, 238 (1975)). The Supreme Court articulated the essential nature of the doctrine in *Hickman v. Taylor*, 329 U.S. 495, 510-11

23

(1947): "In performing his various duties, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. ...This work is reflected, of course, in interviews, statements, memoranda, correspondences, briefs, mental impressions, personal belief, and countless other tangible and intangible ways."  Importantly, "waiver of work-product protection occurs only when a disclosure enables an adversary to gain access to the information" and the "burden of establishing waiver of the work-product doctrine falls...on the party seeking to establish waiver".  *Sealed Air*, 253 F.RD. at 311; *see also Westinghouse Elec. Corp. v. Republic of Phil*., 951 F.2d 1414, 1428 (3d Cir. 1991); *Maldonado v. New Jersey*, 225 F.R.D. 120, 131-32 (D.N.J. 2004).

The work product doctrine is not an absolute bar to discovery of materials prepared in anticipation of litigation.  "Work product can be produced upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means."  *In re Cendant*, 343 F.3d at 663.  Even if the party seeking discovery of information otherwise protected by the work product doctrine has made the requisite showing, "courts must still protect against the disclosure of mental impressions, conclusions, opinions, or legal theories of an attorney and his agents."  *Id*.  Thus, there are "two tiers of protection: first, work prepared in anticipation of litigation by an attorney or his agent is discoverable only upon a showing of need and hardship; second, 'core' or 'opinion' work product that encompasses the 'mental impressions, conclusions, opinion, or legal theories of an attorney or other representative of a party concerning the litigation' is 'generally afforded near absolute protection from discovery' and requires a heightened showing of extraordinary circumstances".  *Id*. at 663-64; *see also In re Ford Motor Co.*, 110 F.3d 954, 962 n.7 (3d Cir. 1997); *Sporck v. Peil*, 759 F.2d 312,

316 (3d Cir. 1985); *Schneck v. International Business Machines Corp.*, 1993 WL 765638, at *4

(D.N.J. 1993); *Times of Trenton Publ'g Corp. v. Pub. Util. Serv. Corp.*, 2005 U.S. Dist. LEXIS

34624, at *12 (D.N.J. 2005).   "Federal courts have consistently ruled that the work product

doctrine is not inapplicable merely because the material was prepared by or for a party's insurer

or agents of the insurer".  *United Coal*, 839 F.2d at 966; *see also Railroad Salvage of Conn. Inc.*

*v. Japan Freight Consolidators (U.S.A.), Inc.*, 97 F.R.D. 37, 41 (E.D.N.Y. 1983), *aff'd*, 779 F.2d

38 (2d Cir. 1985); *Home Ins. Co. v. Ballenger Corp.*, 74 F.R.D. 93, 101 (N.D. Ga. 1977);

*Basinger v. Glacier Carriers, Inc.*, 107 F.R.D. 771, 772-73 (M.D. Pa. 1985); *Hoffman v. Owens-*

*Illinois Glass Co.*, 107 F.R.D. 793, 794 (D. Mass. 1985); *Briggs & Stratton Corp. v. Concrete*

*Sales & Servs.*, 174 F.R.D. 506, 508 (M.D. Ga. 1997).  Indeed, the work-product doctrine "is an

intensely practical one, grounded in the realities of litigation in our adversary system.  One of

those realities is that attorneys must rely on the assistance of investigators and other agents in the

compilation of materials in preparation for trial.  It is therefore necessary that the doctrine protect

materials prepared by agents for the attorney as well as those prepared by the attorney himself".

*Id*.  "Counsel for an insurer may invoke work product protection in favor of documents prepared

by it in anticipation of litigation even though the insurer is not a named party in an action".  *Id*.;

*see also Basinger*, 107 F.R.D. at 772-72.  However, an "insurance company may not insulate

itself from discovery by hiring an attorney to conduct ordinary claims investigations".  *First*

*Aviation Servs. v. Gulf Ins. Co.*, 205 F.R.D. 65, 69 (D. Conn. 2001).  "Documents created by an

insurer, on behalf of a party and in anticipation of litigation, are work product protected from

disclosure under Rule 26(b)(3). [However,] [t]here is no blanket protection for an insurer's

claims files...".  *Kirschbaum v. WRGSB Assocs.*, 1998 U.S. Dist. LEXIS 8860, at *3 (E.D. Pa.

1998).  Separately, "[d]ocuments created on behalf of a non-party are not protected by the work

product rule" because the "rule exists to protect the privacy of the preparations of the attorneys and agents engaged in litigation". *Id.*; *see also Grider v. Keystone Health Plan Cent., Inc.*, 2005 U.S. Dist. 44069 (M.D. Pa. 2005).

Importantly, "the party asserting work product protection bears the burden to show the doctrine applies". *Sealed Air*, 253 F.R.D. at 306; *see also Conoco, Ins. v. U.S. Dep't of Justice*, 687 F.2d 724, 730 (3d Cir. 1982). The Third Circuit has adopted a "two part test for ascertaining whether the documents or things at issue should be protected under the work-product doctrine". *Id.*; *see also In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 183 (D.N.J. 2003); *Muse-Freeman v. Bhatti*, 2008 WL 2165147, at *1 (D.N.J. 2008); *Paris v. R.P. Scherer Corp.*, 2006 WL 1982876, at *2 (D.N.J. 2006). The first inquiry is "the reasonable anticipation test, which requires that the court determine whether litigation could reasonably have been anticipated...[with the] relevant inquiry [being] whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation". *Id.*; *see also In re Gabapentin*, 214 F.R.D. at 183; *Maertin v. Armstrong World Indus.*, 172 F.R.D. 143, 148 (D.N.J. 1997); *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1258 (3d Cir. 1993); *Rockwell Int'l*, 897 F.2d at 1266. "Although the litigation need not be imminent, there must be an identifiable specific claim of impending litigation". *Id.*; *see also Rockwell Int'l*, 897 F.2d at 1266; *Maertin*, 172 F.R.D. at 148; *Leonen*, 135 F.R.D. at 97. The second inquiry "is whether the documents were prepared primarily for the purpose of litigation, ...as documents prepared for other purposes that prove useful in subsequent litigation are not attorney work-product". *Id.* at 307; *see also Paris*, 2006 WL 1982876, at *2; *In re Gabapentin*, 214 F.R.D. at 184. "Documents created in the ordinary course of business, even if useful in subsequent litigation, are not protected by the

26

work-product doctrine". *Id.*; *see also Rockwell Int'l*, 897 F.2d at 1265-66.  Thus, "even where the reasonable anticipation of litigation is established, whether the document comes within the purview of the work-product doctrine still depends primarily on the reason or purpose for the document's production". *Id.*; *In re Gabapentin*, 214 F.R.D. at 184.  "To be protected by the work-product doctrine, a document must have been created for use at trial or because a lawyer or party reasonably anticipated that specific litigation would occur and prepared the document to advance the party's interest in the successful resolution of that litigation". *Willingham v. Ashcroft*, 228 F.R.D. 1, 6 (D.C. Cir. 2005).  "The decision that a document is protected by the work product doctrine is not a linear conclusion and is necessarily dependent on both the content of the document and the factual showing by the party seeking disclosure". *Coregis Ins. Co. v. Law Offices of Carole F. Kafrissen, P.C.*, 57 Fed. Appx. 58, 60 (3d Cir. 2003).  The "work product doctrine does not apply when an attorney undertakes an internal investigation to comply with internal policy" but rather, "only applies where the materials in question were prepared in anticipation of litigation and not in the course of an investigation to discover the precise facts of a particular incident". *Freedman & Gersten, LLP v. Bank of Am., N.A.*, 2010 U.S. Dist. LEXIS 130167, at *19 (D.N.J. 2010).  "[T]here is no privilege at all unless the document was initially prepared in contemplation of litigation, or in the course of preparing for trial" such that a "litigant must demonstrate that documents were created with a specific claim supported by concrete facts which would likely lead to litigation in mind, ...not merely assembled in the ordinary course of business or for other nonlitigation purposes". *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.*, 5 F.3d 1508, 1515 (D.C. Cir. 1993).  "Courts applying these standards have frequently declined to find insured-insurer communications within the penumbra of work-product doctrine". *Id.*

27

The Court notes that with respect to insurance cases,

> [C]ourts have observed that the application of the work product doctrine to documents prepared by insurance companies during claims investigations is difficult because the nature of the insurance business is such that an insurance company must investigate a claim prior to determining whether to pay its insured, and thus pre-litigation investigation is the routine business of insurance companies. ...[Although] a company's investigation may shift from the ordinary course of business to an anticipation of litigation, there is no hard and fast rule as to when this occurs; rather, a fact-specific inquiry is required to determine when this shift occurs. ...[Courts have] considered factors including the retention of an attorney, although hiring an attorney should not necessarily insulate an insurance company behind work product privilege; whether the parties were still jointly exploring ways to resolve their differences; whether either party had declared a definite position or both were still considering their positions; whether, once a position was declared, what was done would have been done for business purposes, regardless of the possibility of litigation; and what the parties' routine business practice of investigation was.

*St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 197 F.R.D. 620, 635 (N.D. Iowa 2000).  An

> insurer's investigative records...[are] not subject to the work product privilege and should be presumed not to be privileged when the records pertained to the investigation before the insurer made its final decision to deny the insured's claim.  It is presumed that a document or thing prepared before a final decision was reached on an insured's claim, and which constitutes part of the factual inquiry into or evaluation of that claim, was prepared in the ordinary and routine course of the insurer's business of claim determination and is not work product.  Likewise, anticipation of litigation is presumed unreasonable under the Rule before a final decision is reached on the claim.  The converse, of course, is presumed for documents produced after claims denial.  ...When an insured presents a first party claim, he is asking for payment under the terms of the insurance contract between him and the insurance company, and the insurance company owes him a duty to adjust his claim in good faith.  There is no initial contemplation of litigation.  By contrast, when a liability insurer investigates a third party claim, the investigation is made in anticipation of claims which, if denied, likely will lead to litigation.  The recognition of this possibility provides the insurer the impetus to gather information regarding the circumstances of the claim. ...[O]ne would expect

there to be more litigation on third-party claims than on direct first-party action contract actions, with a resultant increased anticipation of such litigation in the third-party context. The difference between first and third party claims is important in preserving the underlying purposes of the work product privilege. If the witness statements that a [non-party insurance company] took in investigating claims against [the defendant insured] were not protected work product, then a [third party] suing [the defendant insured] should also be entitled to obtain discovery of all the statements from [the non-party insurance company]. ...That prospect of freeloading, by both the direct and indirect routes, creates exactly the types of risks and incentives that led the Supreme Court to recognize the work product privilege in *Hickman*.

*Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 190 F.R.D. 532, 537-38 (S.D. Ind. 1999). However, the "notes and summaries of...interviews" conducted on behalf of a defendant insurance company "in the ordinary course of...[an] investigation of [a plaintiff insured's] claim to coverage...are not entitled to protection". *Raritan Bay Federal Credit Union v. CUMIS Ins. Soc., Inc.*, 2010 WL 4292175, at *12 (D.N.J. 2010); *see also American Home Assur. Co. v. U.S.*, 2009 WL 3245445 (D.N.J. 2009). Third Circuit courts "have adopted a case by case approach" in order to address concerns that "Rule 26(b)(3) was not intended to protect all insurance claim files from discovery, but, at the same time, by its very language...does protect without reference to any exception for insurance companies....materials prepared in anticipation of litigation". *Basinger v. Glacier Carriers, Inc.*, 107 F.R.D. 771, 774 (M.D. Pa. 1985).

With respect to witness statements, "it is recognized that such statements, when made approximately contemporaneously with the accident, have a unique value in the discovery of truth which cannot be duplicated by deposing witnesses many months later". *Tinder v. McGowan*, 1970 U.S. Dist. LEXIS 9009, at *4-5 (W.D. Pa. 1970); *see also DeBruce v. Pennsylvania R. Co.*, 6 F.R.D. 403 (E.D. Pa. 1947); *Alltmont v. United States*, 177 F.2d 971 (3d Cir. 1949), *cert. denied*, 339 U.S. 967 (1950). "Where opposing counsel has had no opportunity

to question witnesses at a time proximate to the accident, the right to production of contemporaneously made statements frequently has been recognized".  *Id*.; *see also Guilford National Bank of Greensboro v. Southern Ry. Co.*, 297 F.2d 921, 926 (4th Cir. 1962). "When...witnesses are available to the discovering parties only a substantial time thereafter, the likelihood that the discovering party cannot obtain substantially equivalent information is real". *Basinger*, 107 F.R.D. at 774.  However, "[i]t is important to note that mere lapse of time should normally be enough to require production only of statements given at almost the same time as the accident" such that "a statement given a week, or two weeks, after the accident at issue...might well require counsel to demonstrate that the witness was not available for deposition without undue hardship".  *Id*. at 774-75; *see also Hamilton v. Canal Barge Co.*, 395 F. Supp. 975, 978 (E.D. La. 1974).  Indeed, the "statements of a party cannot be secured simply to show that the testimony on deposition is false".  *Tinder*, 1970 U.S. Dist. LEXIS 9009, at *4; *see also Burns v. Mulder*, 20 F.R.D. 605, 606 (E.D. Pa. 1957).

## 5.     Personal Injury to or Death of Seamen

Pursuant to 46 U.S.C. § 30104,

> A seaman injured in the course of employment or, if the seaman dies from the injury, the personal representative of the seaman may elect to bring a civil action at law, with the right of trial by jury, against the employer.  Laws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section.

"Maintenance and cure are rights given to seamen who become ill or injured in the service of a vessel".  *Deisler v. McCormack Aggregates, Co.*, 54 F.3d 1074, 1079 (3d Cir. 1995). "Maintenance is the living allowance for a seamen while he is ashore recovering from injury or illness" while "[c]ure is payment of medical expenses incurred in treating the seaman's injury or illness".  *Id*.  "An employer's obligation to furnish maintenance and cure continues until the

30

seaman has reached the point of maximum cure, that is until the seaman is cured or his condition is diagnosed as permanent and incurable". *Id.*

### 6. Rule 37

Pursuant to FED. R. CIV. P. 37,

> (a) Motion for an Order Compelling Disclosure or Discovery.

>> (5) Payment of Expenses: Protective Orders.

>>> (A) If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing). If the motion is granted – or if the disclosure or requested discovery is provided after the motion was filed – the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the Court must not order this payment if:

>>>> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>>>> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>>>> (iii) other circumstances make an award of expenses unjust.

### B. Plaintiff's Motion

Initially, the Court notes there is no dispute that Walters did not interview Hill, O'Neil, Fullerton, Moore, or Rose and did not prepare written statements for them to sign. *See* Def.'s Opp'n Decl. of Letulle, Ex. B; *see also* Def.'s Opp'n Decl. of Walters, Ex. A. Therefore, Plaintiff's Motion with respect to these individuals is denied as moot.

With respect to Plaintiff, the Court finds that Walters spoke with Plaintiff on December

10, 2009 and December 14, 2009, but did not electronically – or otherwise – record these interviews and that although Walters took some "rough notes" of these interviews, he did not prepare any written statements for Plaintiff to sign.  *See* Def.'s Opp'n Decl. of Letulle, Ex. B; *see also* Def.'s Opp'n Decl. of Walters, Ex. A.   The Court finds that Walters "reported [his] conclusions to the insurer...as well as the potential liability of and defenses available to BBD". *See* Def.'s Opp'n Decl. of Walters, Ex. A.  The Court also finds that during the December 14, 2009 interview of Plaintiff, Plaintiff drew three (3) diagrams and Walters "made a number of notes on one of them".  *See* Def.'s Opp'n Decl. of Letulle, Ex. B; *see also* Def.'s Opp'n Decl. of Walters, Ex. A.   Defendant's counsel produced "[r]edacted copies of these drawings...to Plaintiff's counsel on May 18, 2011".  *See* Def.'s Opp'n Br. at 3-4; *see also* Def.'s Opp'n Decl. of Letulle, Ex. B at 2, ¶ 11.  Therefore, Plaintiff's Motion with respect to the drawings is denied as moot.  To the extent Plaintiff seeks unredacted copies of the drawings, the Court finds that its analysis and determination with respect to Walters' notes of interviews conducted with Plaintiff – as set forth below – is likewise applicable to Walters' written notes on the drawings.

Pursuant to FED. R. CIV. P. 26(b)(3)(C)(ii), the Court finds that Walters' notes with respect to his interviews of Plaintiff are insufficient to meet the definition of "a contemporaneous...recording...that recites substantially verbatim the person's oral statement". Therefore, the Court's consideration of Walters' notes falls under the rubric of FED. R. CIV. P. 26(b)(3)(A).  The Court finds that because Plaintiff was a seaman entitled to "[m]aintenance and cure...[for injuries incurred] in the service of a vessel" (*Deisler*, 54 F.3d at 1079) and held a statutory right "to bring a civil action...against [his] employer" for injuries sustained "in the course of employment" (46 U.S.C. § 30104), and "[b]ecause of the severity of the injury" Plaintiff sustained (Def.'s Opp'n Br. at 1; *see also* Def.'s Opp'n Decl. of Walters, Ex. A at 1-2),

Defendant, defendant's insurer, and Walters reasonably "anticipated that Plaintiff would bring a lawsuit under the Jones Act and general maritime law" (Def.'s Opp'n Br. at 1; *see also Sealed Air*, 253 F.R.D. at 306). The Court finds this situation analogous to a liability insurer's investigation of a third party claim as referenced in *Goodyear* (190 F.R.D. at 537-38) and, therefore, finds that the notes taken by Walters during his interviews of Plaintiff constitute work product "prepared in anticipation of litigation...by or for another party or its representative" (FED. R. CIV. P. 26(b)(3)(A)). Given that these "documents were created with a specific claim supported by concrete facts which would likely lead to litigation in mind" (*Linde Thomson*, 5 F.3d at 1515), and noting that Walters' notes include mental impressions, conclusions, opinions, or legal theories (*see* Def.'s Opp'n Decl. of Walters, Ex. A at 1-2), the Court finds that the documents requested were "created by an insurer, on behalf of a party and in anticipation of litigation, ...[and therefore] are work product protected from disclosure under Rule 26(b)(3)" (*Kirschbaum*, 1998 U.S. Dist. LEXIS 8860, at *3).

Further, the Court finds that pursuant to FED. R. CIV. P. 26(b)(3)(A)(ii), Plaintiff has failed to demonstrate that he "has substantial need for the materials to prepare [his] case and cannot, without undue hardship, obtain their substantial equivalent by other means". Plaintiff has presented no evidence demonstrating that he was "reluctant to speak freely...or that there [is] some reason to believe that [his] prior...statements were inconsistent with what [he] told" Walters. *Basinger*, 107 F.R.D. at 774. Indeed, the "statements of a party cannot be secured simply to show that the testimony on deposition is false". *Tinder*, 1970 U.S. Dist. LEXIS 9009, at *4; *see also Burns*, 20 F.R.D. at 606. Given that the information provided to Walters by Plaintiff does not fall under FED. R. CIV. P. 26(b)(3)(C)(ii), the Court finds that Plaintiff possessed "substantially the same information" at the time he was deposed and therefore denies

Plaintiff's request to compel the production of Walters' notes related to the interviews he conducted with Plaintiff. *Basinger*, 107 F.R.D. at 775-76. Similarly, the Court denies Plaintiff's request to compel the production of Walters' written notes on the drawings he made for Walters.

With respect to Beam, Ferraro, Swan, and Laurence, the Court finds that Walters interviewed these employees of BBD by telephone on December 30, 2009 but did not electronically – or otherwise – record these interviews and that although Walters took "rough notes of these interviews", he did not prepare written statements for any of them to sign . *See* Def.'s Opp'n Decl. of Letulle, Ex. B; *see also* Def.'s Opp'n Decl. of Walters, Ex. A. The Court also finds that Walters "reported [his] conclusions to the insurer...as well as the potential liability of and defenses available to BBD". *See* Def.'s Opp'n Decl. of Walters, Ex. A. Again, pursuant to FED. R. CIV. P. 26(b)(3)(C)(ii), the Court finds that Walters' notes with respect to his interviews of Beam, Ferraro, Swan, and Laurence are insufficient to meet the definition of "a contemporaneous...recording...that recites substantially verbatim the person's oral statement". Therefore, the Court's consideration of Walters' notes falls under the rubric of FED. R. CIV. P. 26(b)(3)(A). For the reasons previously stated, Defendant, defendant's insurer, and Walters reasonably "anticipated that Plaintiff would bring a lawsuit under the Jones Act and general maritime law" (Def.'s Opp'n Br. at 1; *see also Sealed Air*, 253 F.R.D. at 306). Further, based upon the fact that the subject accident occurred on December 4, 2009 and the fact that Walters interviewed Plaintiff on December 10, 2009 and December 14, 2009, the Court finds that by the time of Walters' interviews of Beam, Ferraro, Swan, and Laurence on December 30, 2009, Walters had obtained the requisite factual information to "determine whether litigation could reasonably have been anticipated" (*Sealed Air*, 253 F.R.D. at 306). Accordingly, the Court finds that the notes taken by Walters during interviews of Beam, Ferraro, Swan, and Laurence

constitute work product "prepared in anticipation of litigation...by or for another party or its representative" (FED. R. CIV. P. 26(b)(3)(A)) because "[d]ocuments created by an insurer, on behalf of a party and in anticipation of litigation, are work product protected from disclosure under Rule 26(b)(3)" (*Kirschbaum*, 1998 U.S. Dist. LEXIS 8860, at *3) given that these "documents were created with a specific claim supported by concrete facts which would likely lead to litigation in mind" (*Linde Thomson*, 5 F.3d at 1515) and include Walters' mental impressions, conclusions, opinions, or legal theories.

Further, the Court finds that pursuant to FED. R. CIV. P. 26(b)(3)(A)(ii), Plaintiff has failed to demonstrate that he "has substantial need for the materials to prepare [his] case and cannot, without undue hardship, obtain their substantial equivalent by other means".  Noting that Plaintiff deposed Beam, Ferraro, Swan, and Laurence and having reviewed their deposition transcripts, the Court finds that Plaintiff is unable to demonstrate that any of these individuals "were reluctant to speak freely...or were openly hostile, or that there was some reason to believe that their prior...statements were inconsistent with what they told" Walters.  *Basinger*, 107 F.R.D. at 774.  Indeed, the "statements of a party cannot be secured simply to show that the testimony on deposition is false".  *Tinder*, 1970 U.S. Dist. LEXIS 9009, at *4; *see also Burns*, 20 F.R.D. at 606.  Further, as in *Basinger*, given the passage of nearly one (1) month between the time of Plaintiff's alleged accident and Walters' interviews of Beam, Ferraro, Swan, and Laurence, the Court finds that "the statements obtained were neither contemporaneous nor unique" and that Plaintiff obtained "substantially the same information by deposing the witnesses".  *Basinger*, 107 F.R.D. at 775-76; *see also Tinder*, 1970 U.S. Dist. LEXIS 9009, at *4-6.  Therefore, Plaintiff's request to compel the production of Walters' notes related to interviews conducted with Beam, Ferraro, Swan, and Laurence is denied.

With respect to both Plaintiff's request for an award of counsel fees and costs pursuant to FED. R. CIV. P. 37(a)(5)(A) and Defendant's reciprocal request for an award of counsel fees and costs, the Court denies both requests.  The Court finds that the parties' respective positions were asserted in good faith.

## IV.   CONCLUSION AND ORDER

The Court having considered the papers submitted and opposition thereto, and for the reasons set forth above;

**IT IS** on this 27th day of June, 2011,

**ORDERED** that Plaintiffs' Motion to "compel Defendant and Walters and/or the Nixon Group to produce all statements obtained from interviews of employees of Defendant, others with knowledge of the December 4, 2009 accident, and the statement(s) of Plaintiff and drawing(s) produced by Plaintiff pursuant to FED. R. CIV. P. 34, 37, and 45" and "an award of attorneys' fees and costs" [dkt. entry. no. 19] is **DENIED** consistent with the findings set forth above.

s/ *Douglas E. Arpert*
**DOUGLAS E. ARPERT**
**UNITED STATES MAGISTRATE JUDGE**